Richard A. **RIPPEE** and Barbara Rippee, Appellants,

v.

**GRAND VALLEY MANUFACTURING COMPANY, a corporation, Appellee.**

Nos. 84–3309, 84–3310.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit Rule 12(6) Jan. 16, 1985.

Decided May 17, 1985.

Howard A. Specter, Specter & Buchwach, P.C., Pittsburgh, Pa., for appellants.

Will J. Schaaf, Marsh, Spaeder, Baur, Spaeder & Schaaf, Erie, Pa., for appellee.

Before HUNTER and HIGGINBOTHAM, Circuit Judges, and KELLY, District Judge *.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

In this diversity personal injury case, Richard A. Rippee and Barbara Rippee, his wife, appeal from the Order and judgment of the district court in which the trial judge granted the renewed motion of Grand Valley Manufacturing Company ("Grand Valley") for a directed verdict. FED.R.CIV.P. 50(a). Appellants filed this action on March 21, 1983 in the United States District Court for the Western District of Pennsylvania.[1] The district court bifurcated the case and held a jury trial solely on the issue of liability on May 1 and 2, 1984. Appellants alleged that Grand Valley's negligence caused the injuries which Mr. Rippee sustained at its manufacturing plant. The question on review is whether the trial evidence as to the cause of his injuries was sufficient to submit the claim to the jury. Since we find that the evidence was sufficient, we will vacate the judgment of the district court and remand for proceedings consistent with this opinion.

## I.

In considering whether a directed verdict should be granted in favor of a defendant, a district court must view the evidence in the light most favorable to the plaintiff, give the plaintiff the advantage of every fair and reasonable inference, and then determine whether there is insufficient evidence from which a jury could reasonably find for the plaintiff. *Fireman's Fund Insurance Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1177–78 (3d Cir.1976), *cert. denied*, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977). *Cf. Laskaris v. Thornburg*, 733 F.2d 260, 264 (3rd Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 260, 83 L.Ed.2d 196 (1984). Where there is conflicting evidence that could reasonably lead to inconsistent inferences, the court may not direct a verdict predicated on its determination that some witnesses were more credible than others. *Id.*

---

* Honorable James McGirr Kelly, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

1. Appellants, who are residents of Michigan, initially filed an action in the United States District Court for the Eastern District of Michigan, which subsequently was transferred to the Western District of Pennsylvania. The parties conducted all pre-trial and trial proceedings, however, in the above case. After the district court granted Grand Valley's motion for a directed verdict, it dismissed the transferred action. This court consolidated the appeals in the two cases for briefing and disposition.

In order for the appellants to have prevailed below, they would have had to establish by a preponderance of the evidence that Grand Valley owed Mr. Rippee a duty of care, that it breached that duty through negligent acts or omissions, and that this negligence was the proximate cause of his injuries. *Onufer v. Seven Springs Farm, Inc.*, 636 F.2d 46, 47 (3d Cir.1980). Appellants presented evidence that, at the time he was injured, Mr. Rippee was on Grand Valley's premises in Titusville, Pennsylvania as a business invitee. Grand Valley did not challenge this evidence, and there is sufficient testimony to support this contention. Grand Valley thus owed Rippee the highest duty owed to any entrant upon land, and was under an affirmative duty to protect Rippee not only against known dangers but also against those which it might discover with reasonable care. *Treadway v. Ebert Motor Co.*, 292 Pa.Super. 41, 436 A.2d 994 (1981). Appellants also attempted to prove that Rippee sustained injuries to his head, neck, and right wrist as the result of Grand Valley's failure to provide him with protective head gear and its negligent maintenance and operation of its overhead crane. Grand Valley presented conflicting evidence that there was neither a breach of duty nor a causal connection between Rippee's injuries and any negligence on its part. On appeal, we must review the parties' evidence in the light most favorable to the appellants. *Dovberg v. Dow Chemical Corp.*, 353 F.2d 963 (3d Cir.1965), *cert. denied*, 384 U.S. 907, 86 S.Ct. 1344, 16 L.Ed.2d 360 (1966).

## II.

### A.

The instant case presents a classic example of a situation where a plaintiff has undisputed injuries, but the parties vigorously contest whether the plaintiff was injured solely because of his or her own inadvertence or because of the acts or omissions of the defendant. In short, did Rippee concoct a story here to place the blame on someone else for his fall from the trailer of his flatbed truck, or did he describe the accident as it actually occurred? The district judge obviously viewed Rippee's version of the accident as nothing more than a fictional episode. We have reviewed the evidence extensively and we must disagree.

Mr. Rippee testified that, based upon prior agreements between Grand Valley, Concord Manufacturing Company, and his employer, Don W. Sloan Trucking Company, Rippee arrived at Grand Valley's manufacturing plant on March 24, 1981, to deliver and receive certain equipment used in oil drilling. He backed his flatbed trailer truck into the plant in order to unload his delivery. He then began to load bundles of sucker rods onto his trailer for delivery to other locations.

Rippee loaded the rods with the assistance of Grand Valley employees, particularly Don Slagle and Lloyd Keeley. The bundles of rods were lifted by cables attached to metal hooks on a wide spreader bar, which was suspended from the overhead crane. Slagle operated the crane and Keeley worked with Rippee on the trailer. They stacked three complete rows of bundles lengthwise across the trailer and an additional four bundles on top. Keeley returned to his other work, however, before they put the last four bundles on the truck. Appendix at 93. After completing the load, Slagle parked the crane just off the edge of the driver's side of the trailer. Appendix at 99, 119–22. Rippee and the employees on the ground then took a coffee break. When Rippee returned to his truck, the crane was in the same position. Appendix at 99, 129. He testified at trial that he did not know whether Slagle was still in the crane operator's cab because he did not look up to see if Slagle was there. Appendix at 107, 130–32. At his deposition, however, he stated without qualification that no one was in the cab. Appendix at 123–28.

Rippee testified that he climbed onto his trailer and proceeded to put chains and binders over the rods to secure the load for travel. He intended to hook up and set the

binders before going back to tighten them with the cheater bar.[2] Appendix at 96. Rippee had just finished hooking up and setting the third of five (5) binders when, as he rose to move to the fourth binder, he saw a "blur" and was struck in the head by "some part of that wide bar on the crane that I saw just go over all of a sudden". Appendix at 97. Rippee stated that the blow caused him to fall backwards onto the plant floor. He landed on the top of his head and his right wrist, with which he had attempted to break his fall. The blur which went over his head was yellow, which was also the color of the crane. Appendix at 98. Rippee believed that, because the abrasion on his forehead was round, he was hit by one of the metal hooks on the spreader bar. Appendix at 103.

Other witnesses gave some credence to Rippee's version of how he fell. Everett Messenger, Grand Valley's plant manager at the time, corroborated Rippee's testimony that during the process of unloading and loading, none of the Grand Valley employees helping Rippee wore a hard hat, and no one offered him any protective head gear. Appendix at 106, 173. In addition, because the noise of the crane's warning bell bothered the employees, it had been turned off, even though such a bell was required by government regulations. Appendix at 106, 171. Dennis Crawford, Grand Valley's assistant to the president, testified to the contrary that there was a sign in the plant requesting truck drivers to wear hard hats. Appendix at 250. Slagle believed that Rippee was wearing a hard hat because it was mandatory for everybody to wear one. Appendix at 293.

Crawford also testified that, after Slagle finished loading the trailer, there would have been no reason for him to sit parked in the cab or for the crane to remain stationary off the edge of the driver's side. Appendix at 253–54. Slagle's testimony conflicted with this. He stated that at times he sat idle in the cab for as long as fifteen (15) or twenty (20) minutes while waiting for work. Appendix at 298–99. Moreover, he sometimes had occasion to work in the crane in the area closer to and on the driver's side of the truck if there were materials there. Appendix at 298. As he remembered the day Rippee was injured, however, he stayed in the cab after they finished loading and moved the crane approximately thirty (30) feet from the passenger's side of the trailer to the production area. Appendix at 278–81.

Keeley said that when Rippee was securing the load, the "crane would have been on the passenger's—to the best of my knowledge, on the passenger's side" about twenty (20) feet away "[i]f it was at the ladder, . . ." Appendix at 308–9. When he left the truck area, the crane was also at least twenty (20) feet away from the passenger's side. Appendix at 309. Keeley left and returned to his other work, however, before the last four bundles of rods were put on the truck. The crane could have been moving away from the trailer to pick up another bundle. Since Keeley did not return to the truck area until after the ambulance arrived, he could not know where the crane was located when Rippee was securing the chains and binders. Appendix at 308, 325–26. Keeley in fact testified that he did not know where the crane was during the time between his departure and return or whether it moved during that time. Appendix at 322–23.

Messenger called for the ambulance. He did not see Rippee fall, did not know of anyone who did, and did not speak with Rippee. Nevertheless, he told the ambulance company that Rippee slipped and fell off his load of equipment. Appendix at 168. The hospital records also indicate only that Rippee fell, not that the crane struck him. Appendix at 206–10. There is no way of knowing whether Rippee provided this information or whether it was copied from the initial ambulance report,

---

**2.** A cheater bar is a hollow piece of iron pipe. A person securing a load of equipment on a flatbed trailer can slip the bar over the handle of the binder in order to get more leverage in tightening the chains over the load. Appendix at 96, 245–46.

which was based upon information from Messenger. Appendix at 227.

Dr. Michael Hartman treated Rippee at Titusville Hospital. Based upon his examinations in 1981, and the information Rippee gave him on February 24, 1984, Dr. Hartman formulated an opinion with a reasonable degree of medical certainty that Rippee's injury to the right side of his forehead, in conjunction with the abrasion on the top of his skull and a Colles' fracture of the right wrist, was not consistent with "him having say slipped, fallen feet first forward and struck his head" on the way down. Appendix at 56. Rather, he testified that, "under those circumstances, I would assume that it was caused by him being struck by some object prior to his falling off the truck." Appendix at 57.

Finally, Rippee's wife and daughter testified that, while he was still in the hospital, he told them he had been hit by the crane. Appendix at 151, 192. Mrs. Rippee also testified that she was present when he told Keeley about the crane. Appendix at 339. Keeley denied that Rippee ever mentioned anything about it. Appendix at 340. Instead, he testified that Rippee said he slipped and fell on his head. Appendix at 311. Keeley speculated that, if Rippee had been using a cheater bar when he fell, he may have hit himself in the head with it on the way down; but Rippee never told him that he was using the bar at that time. Appendix at 312, 314.

### B.

At the close of the appellants' case, the district judge held his ruling upon Grand Valley's motion for a directed verdict in abeyance. Grand Valley renewed the motion at the end of all evidence and suggested that Rippee had only recently concocted the story about being hit by the crane. Specifically, Grand Valley's reasons were that the evidence indicated: 1) there was no reason for Slagle to park the crane on the driver's side of the trailer; 2) Rippee made inconsistent statements as to whether Slagle was in the crane operator's cab when Rippee fell; 3) Slagle had moved the crane at least twenty (20) to thirty (30) feet away from the passenger's side of the truck before Rippee fell; 4) the "blur" which Rippee saw and which hit him could just as easily have been a cheater bar as it could have been the crane; and 5) although at the hospital he had seven (7) different opportunities to tell the medical staff the crane had hit him in the forehead, the hospital records revealed that Rippee did not mention the crane until Dr. Hartman examined him on February 24, 1984, three years after the accident. Appendix at 343–49.

The district judge agreed with Grand Valley that appellants had failed to show sufficient evidence of proximate cause. The court granted the directed verdict based upon Grand Valley's specific reasons and on its finding that the record as a whole provided "no credible evidence to go to the jury on the issue of liability". Appendix at 387. We must disagree with the district court's decision.

First, if, as it appears on the face of his order, the district judge weighed the credibility of the witnesses in reaching his decision, he did so improperly. *Fireman's Fund*, 540 F.2d at 1177. Second, the parties' conflicting evidence, particularly as to where the crane was located before Rippee fell, should have been left for the jury to resolve. *Id.* The undisputed injury to Rippee's forehead is consistent with his having been struck by a metal hook on the spreader bar of the crane before he fell. This evidence is sufficient for a jury to predicate a finding in favor of appellants if it decides the credibility issues in their favor. We will therefore vacate the district court's judgment and remand for proceedings consistent with this opinion.