John **STOUT**

v.

**PEUGEOT MOTORS OF AMERICA.**

Civ. A. No. 85–677.

United States District Court,
E.D. Pennsylvania.

Feb. 26, 1986.

Arthur L. Jenkins, Jr., Norristown, Pa., for plaintiff.

Thomas J. Leach, Drinker, Biddle & Reath, Philadelphia, Pa., for defendants.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Plaintiff, a Philadelphia-area Peugeot dealer, originally brought this suit alleging that Peugeot Motors of America (Peugeot), three former Peugeot Employees, and Peugeot's parent company had conspired to injure his business in violation of the Sherman Act and of state tort law. On November 26, 1984, I entered an Order granting defendants' motion for summary judgment on plaintiff's antitrust claim, and dismissing the claims against the individual defendants for want of personal jurisidiction.

On April 4, 1985, I entered an order granting the motion for summary judgment of the parent company. What remained for trial was a diversity case in which plaintiff alleged that Peugeot had tortiously interfered with plaintiff's contractual relations.

Although plaintiff did amend his complaint early in the proceedings, he never amended it to reflect the dismissal of his antitrust claims and of all but one of the defendants. Thus, at the time of trial, the operative paragraphs of his amended complaint read as follows:

15. Independent of the above and in violation of the law, each defendant has conspired with the other defendants to the result that there is a tortious interference with the contractual relations of the plaintiff with the general public and potential customers.

16. Independent of the above and in violation of the law, the defendants have wrongfully and tortiously attempted to prevent the plaintiff from continuing as a Peugeot distributor and dealer.

17. Defendants have wrongfully and tortiously attempted to deprive the plaintiff of his right to earn a living as a Peugeot distributor and dealer.

The trial was bifurcated. At the close of plaintiff's case on the issue of liability, defendant moved for a directed verdict. I denied defendant's motion; defendant then put on its case, and the jury's verdict on liability was for plaintiff. I thereupon deferred the damages phase of the trial, and requested the parties to brief the question whether the jury's verdict was supported by the evidence. I did this because (1) it seemed possible that close scrutiny of the record would establish that plaintiff had not presented sufficient evidence to support a finding of liability, and (2) I felt that until plaintiff's theory of liability, assuming it to be tenable, had been clarified, the issue of damages could not be presented to the jury in a coherent fashion. *See* tr. of conference in chambers, Nov. 22, 1985, at 4–8. Defendant's ensuing submission, styled a motion for judgment notwithstanding the verdict pursuant to Federal Rule of Civil Procedure 50(b), is now ripe for disposition.

In *Neville Chemical Company v. Union Carbide Corp.*, 422 F.2d 1205, 1210 n. 5 (3d Cir.), *cert. denied*, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970), the Third Circuit noted that the standard for evaluating a motion for judgment notwithstanding the verdict is the same as that for evaluating a motion for a directed verdict. The court reaffirmed this holding in *Fireman's Fund Insurance Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1177 n. 5 (3d Cir.1976), *cert. denied*, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977). Relying on *Fireman's Fund*, the court recently restated the well-settled standard:

[A] district court must consider the evidence in the light most favorable to the plaintiff, give the plaintiff the advantage of every fair and reasonable inference, and then determine whether there is insufficient evidence from which a jury could reasonably find for the plaintiff. *Fireman's Fund Insurance Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1177–78 (3d Cir.1976), *cert. denied*, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977).

*Rippee v. Grand Valley Mfg. Co.*, 762 F.2d 25, 26 (3d Cir.1985). *See also Hahn v. Atlantic Richfield Co.*, 625 F.2d 1095, 1099 (3d Cir.1980) (stating standard for judgment notwithstanding the verdict); *Kademenos v. Equitable Life Assurance Soc.*, 513 F.2d 1073, 1074 (3d Cir.1975) (same).

Plaintiff's claim against Peugeot for tortious interference with contractual relations arose out of a transaction between Stout and several other entities, including Yellow Cab Owners and Drivers Association (Yellow Cab). Stout entered into an agreement that apparently had the following elements: Stout was to sell Peugeot taxi cabs to Term Leasing Company; Term Leasing would then lease the cabs to Metro Transportation Company; and Metro Transportation would in turn sublease the cars to Yellow Cab. Although the arrangements between the parties contemplated the purchase of up to 144 cabs, only 62 cabs were in fact sold to Term Leasing.

Stout contends that both (1) Peugeot's failure to deliver enough cabs to him, and (2) Peugeot's interference with Yellow Cab's business decisions, constituted tortious conduct resulting in Stout's inability to sell the other 82 cabs to Term Leasing.

In its motion for judgment notwithstanding the verdict, defendant argues that none of the evidence presented regarding Peugeot's failure to deliver enough cabs to Stout was relevant to an action sounding in tort, because Stout cannot sue in tort for defendant's failure to deliver enough cabs to him. In Peugeot's view, whatever obligation it was under to deliver cabs to Stout sprang from and was governed by the franchise agreement between the parties. Thus, as Peugeot sees it, any injury to plaintiff that may have resulted from defendant's failure to abide by the terms of that agreement is actionable only in contract, not in tort.

Stout responds that "tort actions are certainly viable between contracting parties where the independent elements of the tort can be proved to the satisfaction of the factfinder." Plaintiff's brief at 6.

■ While it is true that the mere existence of a contract between parties does not foreclose the possibility of a tort action arising between them, it does not follow that a plaintiff should be allowed to sue in tort for damages arising out of a breach of contract. To hold otherwise would be to blur one reasonably bright line between contract and tort, and hence introduce needless confusion into the judicial process, a step that Pennsylvania's state and federal courts alike have refused to take. *See, e.g. Standard Pipeline Coating Co. v. Solomon & Teslovich, Inc.,* 344 Pa.Super. 367,

496 A.2d 840, 843–44 (1985); *Glazer v. Chandler,* 414 Pa. 304, 308 & n. 1, 200 A.2d 416 (1964); *Iron Mountain Security Storage Corp. v. American Specialty Foods, Inc.,* 457 F.Supp. 1158, 1165–66 (E.D.Pa. 1978).

If Stout had relied solely on the theory that Peugeot's failure to deliver enough cabs had caused his injury, then his failure to plead in contract would have been dispositive. At one point, however, plaintiff sought to establish himself on broader ground. In a colloquy with the court, plaintiff's counsel stated that:

> [W]hat Peugeot did was continue to alienate [Yellow Cab Owner and Drivers] Association members and Association officers from Stout .... [so] that Yellow Cab people who would have bought the cabs turned elsewhere—elsewhere.[1]

To the extent that this statement embodied a contention that Peugeot had caused Yellow Cab to breach its obligation to buy taxicabs from Stout,[2] it was a formulation presenting a conceptually viable claim for tortious interference with contractual relations. On that theory, this court allowed the case to go to the jury, and instructed the jury accordingly.[3]

Defendant contends, however, that there was insufficient evidence to support the jury's finding of liability for tortious interference with contractual relatons. Under Pennsylvania law, which governs Stout's tort claim here, a plaintiff must establish each of the four elements of this tort: (1) that a contract existed between plaintiff and a third party; (2) that defendant interfered with the third party's performance of the contract; (3) that defendant's interfer-

---

**1.** Tr. Nov. 18, 1985, at 26. This is the only place in the record in which plaintiff managed to articulate this essential aspect of his claim. In his revised pretrial memorandum, in his closing statement, and even a few moments before the colloquy quoted above, plaintiff clung to the view that Peugeot's decision not to ship additional cars to Stout was the means by which Peugeot interfered with Yellow Cab. *See, e.g.* Tr. Nov. 18, 1985, at 24.

**2.** Although the undertaking to purchase some cabs from Stout seems to have been Term Leasing's, it is assumed for purposes of this discus-

sion that Yellow Cab can be found to have been an effective party to the contract, in tandem with Term Leasing, so that a showing that defendant improperly interfered with Yellow Cab's acquisition of additional cabs from Stout would establish defendant's liability for tortious interference with Stout's contractual relations with a third party. The evidence presented as to the existence of the contract was, however, ambiguous. *See infra* note 5 and accompanying text.

**3.** *See* colloquy between counsel and the court, Tr. Nov. 18, 1985, at 24–27, 38–39.

ence was improper; and (4) that defendant's interference with the third party's performance of the contract caused plaintiff to suffer actual harm. *Adler, Barish, Daniels, Levin and Creskoff v. Epstein,* 482 Pa. 416, 393 A.2d 1175, 1183–85 (1978) (stating and discussing four elements, adopting Restatement (Second) of Torts, § 766A); *see also Yaindl v. Ingersoll-Rand Co.,* 281 Pa.Super. 560, 422 A.2d 611, 622 n. 11 (1980) (noting that Pennsylvania has adopted Restatement (Second) of Torts § 766).[4]

Although plaintiff's evidence on the issue of whether a contract existed between plaintiff and Yellow Cab existed was ambiguous,[5] a jury might have found that Yellow Cab, in tandem with Term Leasing, was an effective party to a contract with Stout. Further, plaintiff did introduce evidence to support his claim that Peugeot interfered directly with Yellow Cab. For example, Paul Higley and Juanita Brown, officials of the Yellow Cab Owners and Drivers Association, testified that Peugeot officials had made disparaging remarks to them about Stout, and had encouraged them to go to another local Peugeot dealer, Fred's Foreign Cars, to purchase the taxi cabs that they and Term Leasing had contracted to purchase from Stout. *See, e.g.* Tr. Nov. 14, 1985, at 20, 92. A jury could reasonably find that this interference was improper. Thus, viewing the evidence in the light most favorable to plaintiff, I conclude that plaintiff did present evidence with respect to the first three elements of the tort sufficient to support the jury's verdict.

None of the evidence introduced, however, supports a finding that Peugeot's interference with Yellow Cab caused any harm to plaintiff. Instead, the testimony shows that (1) Peugeot's actions toward Yellow Cab had no influence on Yellow Cab's decisions with regard to Stout, and (2) in any event, it was Term Leasing, and not Yellow Cab, that decided to terminate the contract after the purchase of 62 vehicles.

The decisive testimony with respect to Yellow Cab came from Juanita Brown and Paul Higley, who were founders and officials of the organization. Brown, under questioning by defense counsel, testified as follows:

Q. And so you decided that you would buy the taxicabs through John Stout.

A. Yes.

Q. Did you ever change your mind about that at any time?

A. No.

Q. From the beginning to the end, you were going to do the transaction, whatever the transaction was, with or through Mr. Stout; is that right?

A. Right.

Q. And nothing that anybody ever said to you at any time changed your mind about that.

A. No.

Tr. Nov. 14, 1985, at 98.

Higley's testimony was to the same effect:

Q. Now, I believe you told us that subsequently you felt that Mr. Winter and Mr. Aldarelli [Peugeot officials] were trying to turn you back to Fred's [Foreign Cars]; is that a fair statement?

A. Definitely.

---

4. The jury was instructed on each of the four elements of the tort of interference with contractual relations, and was given the following special interrogatories (which it answered in the affirmative): (1) Was there a contract existing between plaintiff and Yellow Cab Owners and Drivers Association? (2) Did defendant intentionally interfere with Yellow Cab's performance of its contract with plaintiff? (3) Was defendant's interference with Yellow Cab's performance of the contract improper? (4) Did defendant's interference with Yellow Cab's performance of the contract cause plaintiff to suffer actual harm?

5. For example, the testimony of Paul Higley, a founder of Yellow Cab, and of Garfield Ross, President of Term Rent-a-Car, suggests that Stout's contract, if any, was with Term Leasing (tr. Nov. 26, 1985, at 26; tr. Nov. 19, 1985, at 34–44) and that a separate agreement existed between Term Leasing and Yellow Cab (tr. Nov. 14, 1985, at 33). Yet other testimony suggested a single transaction primarily involving Yellow Cab and Stout, with Term Leasing and Metro Transportation involved in financing the transaction. *See, e.g.,* testimony of Juanita Brown and Paul Higley, *quoted infra* pp. 1019–20. See text, *supra,* at p. 4.

Q. Did they succeed?

A. No.

Q. You were bound and determined to deal with John Stout, no matter what anybody at Peugeot had said?

A. The association was, yes.

Tr. Nov. 14, 1985, at 40. Thus the officers of Yellow Cab whose testimony tended to establish that Peugeot interfered with Yellow Cab's relations with Stout also testified that this interference had no impact on their determination to deal with Stout.

Moreover, the record does not support a finding that it was Yellow Cab that made the decision not to buy further cabs from Stout. Higley's testimony is plain that no such decision was made during his tenure at Yellow Cab:

Q. You had an arrangement with Mr. Stout for the delivery to you of 144 vehicles; is that right?

A. Yes.

Q. Didn't that remain in effect until the time you left?

A. To the best of my knowledge.

Q. Did the association, at any time, to your knowledge, notify Mr. Stout, we don't want any more vehicles?

A. No.

Tr. Nov. 19, 1985, at 11.

Further, the testimony of Garfield Ross, the President of Term Rent-A-Car, a company that assisted Term Leasing in the cab transaction, establishes that it was Term Leasing that decided to stop buying cabs from Stout. Ross testified that he and the Chairman of the Board of Term Leasing made the decision not to purchase any more than 62 cars from Stout, that they had no discussions with anyone at Peugeot about Stout prior to this decision, and that the decision was based on disagreements with Stout over Stout's delivery charges. Tr. Nov. 19, 1985, at 42–45.

The testimony of Brown and Higley unambiguously supports the conclusion that Peugeot's statements to Yellow Cab officials had no impact on decisions taken by Yellow Cab with respect to acquiring more cabs from Stout. Ross' testimony is consistent with their account, and also corroborates the conclusion that Stout suffered no harm as a result of Peugeot's statements to Yellow Cab. In his response to defendant's motion for judgment notwithstanding the verdict, plaintiff has not directed the court's attention to any statement in the record which undercuts this testimony.[6]

■ I conclude that any harm suffered by Stout was not the result of Peugeot's interference with decisions taken by Yellow Cab. Thus the fourth factor of the tort of interference with contractual relations— that the tortious interference cause actual harm to the plaintiff—was not supported by any evidence, and there is no legal basis for the jury's verdict. Defendant's motion for judgment notwithstanding the verdict will therefore be granted. An appropriate Order is attached.

### ORDER

For the reasons stated in the accompanying memorandum, it is hereby ORDERED that defendant's motion for judgment notwithstanding the verdict is GRANTED, and plaintiff's motion to proceed with trial on the issue of damages is DENIED.

---

**6.** Indeed, except for one colloquy with the court, *see supra* note 1 and accompanying text, plaintiff has repeatedly stated that the reason for plaintiff's injury was Peugeot's failure to deliver enough taxicabs to Stout.