**VALLEY FORGE CONVENTION & VISITORS BUREAU**

v.

**VISITOR'S SERVICES, INC.**

**Civil Action No. 98–2054.**

United States District Court, E.D. Pennsylvania.

Nov. 5, 1998.

David L. Narkiewicz, Blue Bell, PA, for Plaintiff.

John A. Gallagher, Norristown, PA, for Defendant.

## MEMORANDUM

WALDMAN, District Judge.

### I. Background

Plaintiff initiated this action in the Montgomery County Common Pleas Court, asserting claims for breach of contract, unjust enrichment and intentional and negligent interference with prospective contractual relations. Defendant removed the action to this court premised on diversity jurisdiction. Presently before the court is defendant's Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6). The parties agree that Pennsylvania law governs the substantive issues in the case.

### II. Legal Standard

Dismissal for failure to state a claim is appropriate only when it clearly appears that plaintiff can prove no set of facts to support the claim which would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Robb v. Philadelphia*, 733 F.2d 286, 290 (3d Cir.1984). Such a motion tests the legal sufficiency of a claim accepting the veracity of the claimant's allegations. *See Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990); *Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir.1987); *Winterberg v. CNA Ins. Co.*, 868 F.Supp. 713, 718 (E.D.Pa.1994), *aff'd*, 72 F.3d 318 (3d Cir.1995). A complaint may be dismissed when the facts alleged and the reasonable inferences therefrom are legally insufficient to support the relief sought. *See Pennsylvania ex rel. Zimmerman v. Pepsi-Co., Inc.*, 836 F.2d 173, 179 (3d Cir.1988).

### III. Facts

Plaintiff alleges the following facts.

Plaintiff is an agency of Montgomery County. It promotes tourism and conventions in the County for the benefit of the County and various businesses which contribute funding to support plaintiff's activities.

Plaintiff contracted with defendant for services to help attract tourists and business conventions. Defendant agreed to operate a telephone reservation system, maintain a computerized database of bookings at plaintiff's members' properties and promptly forward promotional materials to prospects re-

sponding to plaintiff's advertising. Plaintiff was to provide advertising to encourage prospective customers to inquire with defendant for more detailed information regarding Montgomery County. Defendant would receive commissions on the gross revenue from rooms booked and for entertainment and transportation services purchased by tourists and conventioneers. Plaintiff satisfied its obligations by undertaking an advertising campaign costing $271,506.10 and paying over $30,000 in fees to defendant. Defendant breached its contractual obligations by failing to download its database and mail promotional material to prospects promptly. This caused plaintiff and its members "to lose many potential contractual relations with prospects." Plaintiff and its members "suffered economic loss along with loss of business reputation and goodwill."

Defendant's failure timely to forward information to plaintiff regarding "potential contracts" was "intentional, malicious, reckless, wanton, willful and done with willful disregard for the interests of Plaintiff."

Appended to plaintiff's complaint is a copy of the parties' agreement. It contains a limitation of liability clause which reads:

*VI. LIMITATION OF LIABILITY*

IN NO EVENT SHALL VSI BE LIABLE TO VFCVB, PARTICIPATING BUREAU MEMBERS OR CUSTOMERS FOR ANY DAMAGES RESULTING FROM LOSS OF USE, DATA, PROFIT OR BUSINESS OR FOR ANY SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES WHETHER, ARISING IN AN ACTION OF CONTRACT, TORT OR OTHER LEGAL THEORY.

## IV. *Discussion*

■ Under Pennsylvania law, a limitation of liability clause in a commercial contract is enforceable "as long as the limitation which is established is reasonable and not so drastic as to remove the incentive to perform with due care." *Valhal Corp. v. Sullivan Assoc., Inc.*, 44 F.3d 195, 204 (3d Cir.1995).

Defendant argues that the plain meaning of the subject clause is to immunize it against all of plaintiff's claims. Such does not appear from a plain reading of the language of the clause. The clause precludes recovery against defendant for certain kinds of losses.

■ In its breach of contract count, plaintiff seeks recovery of fees paid to defendant under the terms of the contract and of advertising expenditures made according to the requirements of the contract. In its unjust enrichment count, plaintiff requests unreturned fees. The limitation of liability clause does not clearly on its face preclude the recovery of fees paid to defendant for services not rendered or advertising expenditures fairly characterized as reliance damages.

■ While a limitation of liability clause may relieve the beneficiary of liability for the effects of his negligent conduct, it will not preclude recovery for damages caused by willful or wanton conduct. *See Valhal*, 44 F.3d at 203-04. As noted, in its intentional interference count plaintiff alleges that defendant's conduct was "intentional," "wanton" and "willful."

The limitation of liability clause itself thus does not require dismissal of plaintiff's breach of contract, unjust enrichment and intentional tort claims. It does appear to preclude recovery of the damages sought by plaintiff for negligent interference with prospective contractual relations which claim, in any event, is otherwise deficient.

■ Defendant correctly contends that the doctrine of unjust enrichment is inapplicable where the parties' relationship is based upon an express agreement. *See Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir.1987). A plaintiff, however, may plead inconsistent claims in the alternative. *See* Fed.R.Civ.P. 8(e)(2); *Independent Enterprises v. Pittsburgh Water & Sewer Authority*, 103 F.3d 1165, 1175 (3d Cir.1997); *Arber v. Equitable Beneficial Life Ins. Co.*, 889 F.Supp. 194, 199 (E.D.Pa.1995) (refusing to dismiss unjust enrichment count in complaint containing breach of contract claim as valid contract had yet to be proven).

Defendant argues that plaintiff has failed to state cognizable claims for tortious interference with contractual relations and any

such claim would be barred by the economic loss doctrine.

■ The economic loss doctrine precludes recovery in tort for economic losses arising from breach of contract. *See Duquesne Light Co. v. Westinghouse Elec. Corp.,* 66 F.3d 604, 618 (3d Cir.1995); *General Public Utilities v. Glass Kitchens of Lancaster, Inc.,* 374 Pa.Super. 203, 542 A.2d 567, 570 (Pa.Super.1988). The Third Circuit has predicted that the Pennsylvania Supreme Court would follow the economic loss doctrine. *See 2–J Corp. v. Tice,* 126 F.3d 539, 541 (3d Cir.1997). *See also REM Coal Co. v. Clark Equip. Co.,* 386 Pa.Super. 401, 563 A.2d 128, 132 (1989).

■ The economic loss doctrine has most commonly been invoked in the products liability context to preclude tort actions for product malfunctions that did not cause physical injury or damage to tangible property. Economic losses include damages due to loss of customers, sales and profits. *See 2–J Corp.,* 126 F.3d at 541; *Palco Linings, Inc. v. Pavex, Inc.,* 755 F.Supp. 1269, 1270 (M.D.Pa. 1990).

Contrary to plaintiff's suggestion, they also include loss of business reputation and goodwill. *See Eagle Traffic Control v. Addco,* 882 F.Supp. 417, 419 (E.D.Pa.1995) ("damage to [business] reputation" is "within the ambit of economic loss"); *Lucker Mfg. v. Milwaukee Steel Foundry,* 777 F.Supp. 413, 416 (E.D.Pa. 1991) ("damages for the loss of goodwill are in the nature of economic loss" and thus are "excluded from tort recovery by the economic loss rule"). *See also American & Foreign Ins. Co. v. Phoenix Petroleum Co.,* 1998 WL 333965, *5 (E.D.Pa. June 23, 1998) ("Loss of good will and reputation constitutes economic loss, not property damage"); *International Ins. Co. v. St. Paul Fire & Marine Ins. Co.,* 1988 WL 113360, *6 (E.D.Pa. Oct.24, 1988) ("loss of good will" and "loss of reputation" are "economic losses" and "do not constitute damage or injury to tangible property").

The economic loss doctrine has been applied to service contracts. *See Factory Market, Inc. v. Schuller International Inc.,* 987 F.Supp. 387, 397 (E.D.Pa.1997) (holding economic loss doctrine bars negligence claim based on service contract); *Sun Co., Inc. v.*

*Badger Design & Constructors, Inc.,* 939 F.Supp. 365 (E.D.Pa.1996) (applying economic loss doctrine to losses from breach of engineering services contract). *See also Bash v. Bell Tel. Co. of Pa.,* 411 Pa.Super. 347, 601 A.2d 825, 829 (Pa.Super.1992) (denying recovery in tort for losses resulting from failure of phone company to list commercial advertiser in phone book).

■ That a plaintiff may not sue in tort for economic losses arising from a breach of contract, however, does not preclude the possibility of a tort action between parties to a contract. *Stout v. Peugeot Motors of America,* 662 F.Supp. 1016, 1018 (E.D.Pa.1986). There is no cause of action for tortious interference where the plaintiff's business relationships with third parties are adversely affected as a consequence of a defendant's breach of contractual obligations to the plaintiff. *Glazer v. Chandler,* 414 Pa. 304, 200 A.2d 416, 418 (Pa.1964). Conduct by which a defendant breaches a contract, however, may also support a tortious interference claim if it is undertaken with the intention of injuring the plaintiff's business relationships. *George A. Davis, Inc. v. Camp Trails Co.,* 447 F.Supp. 1304, 1310 (E.D.Pa.1978). In short, where the elements of the tort can be pled in good faith, a plaintiff is not precluded from asserting a claim for intentional interference with prospective business relationships against a defendant whose conduct may also constitute a breach of contract between the parties.

■ It is not sufficient, however, to show that the defendant intentionally breached its contract. A plaintiff must show that the defendant acted for the malevolent purpose of interfering with the plaintiff's existing or prospective business relationships. *Id.* at 1310–11 (wrongful termination of exclusive sales agreement accompanied by letter circulated to members of trade falsely implying quality of plaintiff's services was unsatisfactory); *Glenn v. Point Park College,* 441 Pa. 474, 272 A.2d 895, 899 (1971) (allegation that defendant "intentionally," "wrongfully" and "maliciously" prevented plaintiff from entering into business relationship insufficient to show "specific intent" to harm plaintiff).

■ It is also not enough to show the defendant should have foreseen that its breach of contract would cause plaintiff to lose business. Otherwise, virtually every breach of a commercial contract to supply a plaintiff with a needed product, component or service would support an intentional interference claim. Commercial parties almost invariably contract for goods and services because they are needed to sustain or expand their businesses. It will thus almost always be foreseeable to the supplying party that its failure to perform may well disrupt the business relations and opportunities of the receiving party. Also, as in *George A. Davis,* the acts complained of must have been directed by the defendant to a third party and not the plaintiff. *Windsor Securities, Inc. v. Hartford Life Ins. Co.,* 986 F.2d 655, 660 (3d Cir.1993); *Peoples Mortgage Co. v. Federal National Mortgage Ass'n,* 856 F.Supp. 910, 930 (E.D.Pa.1994); *Stout,* 662 F.Supp. at 1018 & n. 2.

■ Plaintiff has not alleged that in breaching the instant contract defendant acted with the purpose or intent of preventing business relationships between plaintiff and third parties. It is merely alleged that this was a foreseeable consequence. To the contrary, plaintiff alleges that defendant rendered deficient performance "so it did not have to expend funds to provide the personnel and time it would take to fulfill its duties under the contract thereby reaping a much higher benefit from the contract payments made by Plaintiff." In its brief, plaintiff argues that defendant's "actions were taken in order to not increase Defendant's overhead and cost of performing" and that defendant's motive was "to save itself money and resources."

■ A breach of contract motivated by a defendant's desire to reduce costs or increase profits or to avoid the consequences of a "bad bargain" will not support an intentional interference claim. *George A. Davis,* 447 F.Supp. at 1310.

Also, plaintiff's intentional interference claim is premised on defendant's "intentional and calculated refusal to provide information to Plaintiff." There is no specific allegation that with an intent to harm plaintiff, acts were directed by defendant at third parties for the purpose of disrupting or preventing business relationships.

Plaintiff has not adequately set forth a claim for intentional interference with prospective contractual relationships and, from what plaintiff has pled, it appears unlikely that it can do so consistent with the strictures of Fed.R.Civ.P. 11(b). Because it is not inconceivable that plaintiff might in good faith be able to plead such a claim, however, this claim will be dismissed without prejudice.

■ There is no general cause of action in Pennsylvania for negligent interference with contractual relations. *See Peoples Mortgage,* 856 F.Supp. at 935; *Frankel v. Northeast Land Co.,* 391 Pa.Super. 226, 570 A.2d 1065, 1070 n. 3 (Pa.Super.1990). Plaintiff cites no case and the court has found no reported decision in which a claim for negligent interference with existing or prospective contractual relations under Pennsylvania law has survived. To sustain this claim, plaintiff relies on statements in several opinions rejecting negligent interference claims to the effect that such a claim may lie if the parties involved had a "special relationship." Plaintiff suggests that it had such a relationship with defendant.

■ A "special relationship" is one involving confidentiality, the repose of special trust or fiduciary responsibilities. *See Commonwealth, Dept. of Trans. v. E–ZParks, Inc.,* 153 Pa.Cmwlth. 258, 620 A.2d 712, 717 (1993). It generally involves a situation where by virtue of the respective strength and weakness of the parties, one has the power to take advantage of or exercise undue influence over the other. *Estate of Evasew,* 526 Pa. 98, 584 A.2d 910, 913 (1990). *Also see, e.g., Maritrans GP, Inc. v. Pepper, Hamilton & Scheetz,* 529 Pa. 241, 602 A.2d 1277, 1283 (1990) (special relationship exists between attorney and client); *Frowen v. Blank,* 493 Pa. 137, 425 A.2d 412, 418 (1981) (special relationship exists between 86 year old widow with no formal education and her sole business counselor); *Estate of Thomas,* 463 Pa. 284, 344 A.2d 834, 836 (1975) (special relationship between attorney-scrivener and

testator); *Silver v. Silver,* 421 Pa. 533, 219 A.2d 659, 662 (1966) (special relationship between widow and sons upon whom she relied to manage her property); *Leedom v. Palmer,* 274 Pa. 22, 117 A. 410, 412 (1922) (special relationship between guardian and ward).

Plaintiff cites no case in which such a special relationship was found to exist between parties to an arms length business contract. If parties to routine arms length commercial contracts for the provision of needed goods or services were held to have a "special relationship," virtually every breach of such a contract would support a tort claim. *See L & M Beverage Co. v. Guinness Import Co.,* 1995 WL 771113, *5 (E.D.Pa. Dec.29, 1995) (parties to exclusive sales contract did not have type of "special relationship" necessary to support negligent interference claim); *Elliott v. Clawson,* 416 Pa. 34, 204 A.2d 272, 273 (1964) (no special relationship between parties to arms length business contract); *Creeger Brick & Bldg. Supply, Inc. v. Mid-State Bank & Trust Co.,* 385 Pa.Super. 30, 560 A.2d 151, 154 (1989) (no special relationship between lender and borrower); *E-Z Parks,* 620 A.2d at 717 (no special relationship between parties to arms length commercial lease agreement).

Plaintiff contends that a "special relationship" arose when it gave defendant "substantial control of its advertising support." There is a crucial distinction between surrendering control of one's affairs to a fiduciary or confidant or party in a position to exercise undue influence and entering an arms length commercial agreement, however important its performance may be to the success of one's business. That a market is dependent on a supplier timely to furnish it with produce does not render the relationship between them "special." That a retailer contracts with a direct mail firm to ensure the delivery of Christmas catalogues four weeks before Christmas does not create a "special relationship" although much of the retailer's annual profit may depend upon proper performance.

### V. *Conclusion*

Consistent with the foregoing, defendant's motion will be granted in part and denied in part.

Plaintiff's claim for negligent interference with prospective contractual relations will be dismissed. Plaintiff's claim for intentional interference with prospective contractual relations will be dismissed without prejudice. Plaintiff's claims for breach of contract and unjust enrichment will not be dismissed.