J-A07023-15

2015 PA Super 195

| | |
|---|---|
| EUGENE R. YENCHI AND RUTH I. YENCHI, HUSBAND AND WIFE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| AMERIPRISE FINANCIAL, INC., AMERIPRISE FINANCIAL SERVICES, INC., RIVERSOURCE LIFE INSURANCE COMPANY AND BRYAN GREGORY HOLLAND | |
| Appellees | No. 753 WDA 2014 |

Appeal from the Judgment Entered May 5, 2014
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD 01-006610

BEFORE:  BENDER, P.J.E., LAZARUS, J., and MUNDY, J.

CONCURRING AND DISSENTING OPINION BY LAZARUS, J.:

**FILED: September 15, 2015**

I concur with the majority that the denial of the Yenchis' motion to compel production of sales practices documents was proper, that the pre-amended version of the Unfair Trade Practices Consumer Protection Law (UTPCPL)[1] applies, and that the trial court did not err in rejecting several of the Yenchis' proposed *voir dire* questions.  I respectfully dissent, however, as to the majority's decision to remand this matter for further proceedings

---

[1] 73 P.S. §§ 201-1 – 201.9.3.

regarding the Yenchis' claims for breach of fiduciary duty, fraudulent misrepresentation, and violation of the UTPCPL.

In my view, the relationship between the Yenchis and Appellees cannot be characterized as a confidential or fiduciary relationship, since the Yenchis bear the burden of proof and have failed to set forth a *prima facie* case demonstrating that such a relationship exists. **See Wisniski v. Brown & Brown Ins. Co.**, 906 A.2d 571, 579 (Pa. Super. 2006) (party asserting confidential relationship bears burden of proving its existence).

Instantly, the breach of fiduciary duty claim was decided via summary judgment. Our rules of civil procedure dictate that

> [w]here the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Further, failure of a nonmoving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law.
>
> Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder.

**Sokolsky v. Eidelman**, 93 A.3d 858, 862 (Pa. Super. 2014) (quotation marks and citations omitted).

It is well-established that a confidential relationship resulting in a fiduciary duty "can arise even in the absence of an agency relationship." **Wisniski**, **supra**, at 577. As the majority correctly notes, the determination

of whether a confidential relationship exists is a question of fact that is highly specific to the particular matter. "The critical question is whether the relationship goes beyond mere reliance on superior skill, and into a relationship characterized by overmastering influence on one side or weakness, dependence, or trust, justifiably reposed on the other side." *Id.* Further, where the relationship "between the parties is not one ordinarily known as confidential in law, the evidence to sustain a confidential relation must be certain." *Leedom v. Palmer*, 117 A. 410, 412 (Pa. 1922).

The relationship created by a commercial, arm's-length transaction is such a relationship that is not ordinarily confidential by law. Indeed, in *Wisniski*, our Court established a presumption against the existence of a confidential relationship in interactions between insurance brokers and their clients. The Court observed

> that clients will bring various degrees of sophistication and initiative to their relationship with a broker. While one client may unthinkingly accept any recommendation and place a great deal of trust in a broker, another client may be a "picky shopper" and second-guess the broker's every decision. We certainly cannot conclude as a matter of law that the relationship between an insurance broker and a client is always (or even generally) confidential. To the contrary, we will presume that, **for the great majority of broker-client interactions, the relationship will not be so extremely one-sided as to be confidential**.

*Wisniski*, *supra*, at 578-79 (emphasis added).

Moreover,

> [m]ost commercial contracts for professional services involve one party relying on the other party's superior skill or expertise

- 3 -

in providing that particular service. Indeed, if a party did **not** believe that the professional possessed specialized expertise worthy of trust, the contract would most likely never take place.

This does not mean, however, that a fiduciary relationship arises merely because one party relies on and pays for the specialized skill or expertise of the other party. Otherwise, a fiduciary relationship would arise whenever one party had any marginally greater level of skill and expertise in a particular area than another party. Rather, the critical question is whether the relationship goes **beyond** mere reliance on superior skill, and into a relationship characterized by "overmastering influence" on one side or "weakness, dependence, or trust, justifiably reposed" on the other side.

*eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 23 (Pa. Super. 2002) (quoting *Basile v. H & R Block, Inc.*, 777 A.2d 95, 101 (Pa. Super. 2001)). Additionally, the *eToll* Court accepted and agreed with the reasoning that "[t]here is a crucial distinction between surrendering control of one's affairs to a fiduciary or confidant or party in a position to exercise undue influence and entering an [arm's-]length commercial agreement." *eToll*, *supra*, at 23 (quoting *Valley Forge Convention & Visitors Bureau v. Visitor's Servs., Inc.*, 28 F.Supp. 2d 947, 953 (E.D.Pa. 1998)).

The record reveals that the Yenchis developed a relationship with Holland, an American Express employee who sold insurance and financial products and provided fee-based financial planning advice based upon an analysis of the Yenchis' assets and liabilities. However, the Yenchis made each decision to purchase a product from Holland, as indicated by their signatures authorizing the purchases. Thus, throughout their dealings with Holland, the Yenchis maintained their agency and did not surrender complete control to Holland. *eToll*, *supra*.

- 4 -

Indeed, the Yenchis chose to follow only some of the recommendations included in the Financial Management Proposals. For example, the Yenchis did not purchase additional life insurance as recommended in the 1998 Proposal. Despite Mr. Yenchi's testimony that he did not take any action regarding the investments and that he let Holland handle everything, Mr. Yenchi signed his name on each financial action he agreed to take. *See* N.T. Deposition of Eugene Yenchi, 12/2/09, at 145. Because the Yenchis retained their decision-making authority, the relationship cannot be characterized as one in which Holland exerted overmastering influence over the Yenchis. *Wisniski*, *supra*.

The Yenchis assert that they blindly trusted that Holland was advising them to take actions that would be in their best interest financially. However, this claim is based upon a bare assertion that simply because Holland had greater knowledge regarding financial planning, the relationship became a confidential one. This argument is belied by the Yenchis' decisions to follow some, but not all, of Holland's recommendations. The Yenchis' argument is further undermined by the fact that Holland was acting on behalf of American Express. As Judge Wettick noted, "the policyholders knew that they were dealing with a representative of American Express who was recommending purchases of American Express investments." Trial Court Opinion, 7/25/14, at 3.

Ultimately, the record indicates that the Yenchis relied on Holland's advice and superior knowledge during the relationship, primarily regarding

- 5 -

life insurance. However, in my view, the evidence offered by the Yenchis fails to make a *prima facie* showing that the relationship progressed beyond reliance on superior skill that is the typical reason for entering into a contract for professional services. **eToll**, **supra**.

Accordingly, the Yenchis have failed to adduce sufficient, much less certain, evidence to sustain a claim that a confidential or fiduciary relationship existed between the parties. **Sokolsky**, **supra**; **Leedom**, **supra**. Thus, the trial court did not abuse its discretion when it granted Appellees' motion for summary judgment.

Because I would affirm the trial court's dismissal of the Yenchis' claim for breach of fiduciary duty, I would affirm the trial court's grant of the Appellees' motions *in limine*, which precluded the introduction of evidence regarding fraudulent misrepresentation.[2]

Here, in ruling on the Yenchis' motions *in limine*, the trial court permitted the Yenchis to introduce evidence of the replacement of their preexisting life insurance policies, the language of the American Express policy, and the purchase of the financial management proposals. The

_____

[2] The majority indicates that the trial court's disposition of the motions *in limine* was a clear error of law since it was error to dismiss the fiduciary duty claim. The majority also notes that the precluded information could be relevant to the Yenchis' fraudulent misrepresentation and UTPCPL claims. However, the issue the Yenchis raise on appeal regarding the motions *in limine* is limited to whether the trial court erred in preventing the introduction of evidence supporting fraudulent misrepresentation.

Yenchis were prevented, however, from offering expert testimony describing how these facts failed to meet a standard of care since their claim was limited to fraudulent misrepresentation.[3] Because evidence related to standard of care is not relevant to establishing fraudulent misrepresentation, the trial court neither erred nor abused its discretion when it granted Appellees' motions *in limine*.

For the foregoing reasons, I would affirm the trial court's judgment in its entirety.

---

[3] To establish fraudulent misrepresentation, a plaintiff must prove: (1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation and (5) damage to the party defrauded as a proximate cause. **Ross v. Foremost Ins. Co.**, 998 A.2d 648, 654 (Pa. Super. 2010).