PHILADELPHIA TMC, INC. individually and trading as Telemarketing Communications of Greater Philadelphia

v.

AT & T INFORMATION SYSTEMS, INC.

Civ. A. No. 86–2840.

United States District Court, E.D. Pennsylvania.

Dec. 15, 1986.

Christopher Scott D'Angelo, Philadelphia, Pa., for plaintiff.

David Pittinsky, and Hope Comisky, Philadelphia, Pa., for defendant.

## MEMORANDUM

NEWCOMER, District Judge.

In this action, plaintiff, Philadelphia TMC, Inc. ("TMC"), seeks monetary damages and injunctive relief stemming from a contractual relationship with the defendant, AT & T Information Systems Inc. ("ATTIS"). ATTIS has moved to dismiss two of plaintiff's claims, one under the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et. seq.* (Count VI), and a second claim of fraud (Count II).[1] For the reasons enumerated below, defendant's motion will be granted, with leave to amend.

This case arises from a commercial transaction in which plaintiff leased telephone switching equipment from the defendant. Plaintiff's amended complaint alleges various defects in the design, and negligence in the service of the equipment. Plaintiff also pleads that defendant acted fraudulently and in violation of RICO. The paragraphs of the complaint relevant to these claims read as follows:

15. On several occasions ATTIS represented to TMC that the Switch could be and would be designed, equipped, set and maintained with secure restriction levels, and that ATTIS could and would service the Switch promptly and expertly.

16. On several occasions ATTIS represented to TMC that ATTIS had de-

signed, equipped, set and maintained the proper restriction levels.

\* \* \* \* \* \*

39. ATTIS, by virtue of its aforesaid acts, omissions and misrepresentations, has engaged in conduct which constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1) and 1961(5) including, *inter alia,* (a) acts of transmitting by sounds and signals over interstate wire in conjunction with and in furtherance of a scheme to defraud TMC, which acts are indictable under 18 U.S.C. § 1343; (b) acts of delivering matters to and receiving matters from the United States Postal Service in conjunction with and in furtherance of a scheme to defraud TMC, which acts are indictable under 18 U.S.C. § 1341; and (c) otherwise engaging in conduct specified in 18 U.S.C. § 1961.

40. ATTIS has received income which is derived, both directly and indirectly, from the aforesaid pattern of racketeering activity and has used and/or invested, directly and indirectly, such income and/or the proceeds of such income, or part of such income and/or the proceeds of part of such income, in its operations and in the maintenance, furtherance and operation of its affairs in violation of 18 U.S.C. § 1962(a).

41. ATTIS, which at all time material and relevant hereto has been associated with ATTCOM within the meaning of 18 U.S.C. § 1962(c), has, by virtue of the aforesaid acts, omissions and misrepresentations, conducted and participated, directly and indirectly, in the conduct of ATTCOM's affairs through the aforesaid pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

42. ATTIS, which at all times material and relevant hereto has been associated with AT & T within the meaning of 18 U.S.C. § 1962(c), has, by virtue of the aforesaid acts, omissions and misrepresentations, conducted and participated, directly and indirectly, in the conduct of

---

1. The remaining claims are for breach of contract (Counts I and III), negligence (Count IV) and tortious interference with business relations (Count V).

AT & T's affairs through the aforesaid pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

Defendant has moved to dismiss the fraud and RICO counts for two reasons. First, defendant argues that the RICO count fails to state a claim under Fed.R. Civ.P. 12(b)(6) and must be dismissed. Second, defendant ATTIS asserts that the plaintiff has not pleaded its RICO and fraud allegations with sufficient particularity as required by Fed.R.Civ.P. 9(b). Defendant also seeks in the alternative, to require a more definite statement as to plaintiff's fraud and RICO claim.

## I.

In Count VI, TMC pleads a cause of action under RICO sections 1962(a) and 1962(c). Those sections provide

(a) It shall be unlawful for any person who has received any income derived ... from a pattern of racketeering activity ... to use or invest ... any part of such income, in acquisition of any interest in, or establishment or operation of, any enterprise....

\* \* \* \* \* \*

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

Section 1961 defines a "pattern of racketeering activity" as requiring "at least two acts of racketeering ... the last of which occurred within ten years ... after the commission of a prior act of racketeering activity." Section 1961(5). "Racketeering activity" is defined as specified federal offenses and certain state law offenses punishable by imprisonment of more than a year. Section 1961(1).

The RICO count alleges that ATTIS violated section 1962(a) by receiving income derived from a pattern of racketeering activity and by using and/or investing that income in its own operations. Amended Complaint ¶ 40. Count VI also alleges that ATTIS violated section 1962(c) by conducting or participating in the conduct of the affairs of American Telephone and Telegraph ("AT & T") and AT & T Communications, Inc. ("ATTCOM") through a pattern of racketeering activity. Amended Complaint ¶¶ 41–42.

Defendant argues that the Amended Complaint is insufficient to state a cause of action because TMC has not identified any RICO "enterprises" separate from the "person" alleged to have committed the RICO violation. *See B.F. Hirsch, Inc. v. Enright Refining Co.*, 751 F.2d 628 (3d Cir.1984). Indeed, ATTIS argues that as members of common corporate family, AT & T, ATTIS and ATTCOM cannot be sufficiently separate to be both "person" and "enterprise" in any valid RICO claim.

### A. *Section 1962(c)*

In *B.F. Hirsch, supra,* the Court of Appeals for the Third Circuit held that for the purpose of section 1962(c), the "person" who was "associated with any enterprise" and who "conduct[s] or participate[s] ... in the conduct of such enterprise's affairs through a pattern of racketeering activity" had to be separate and distinct from the "enterprise." *Id.* at 633–34. *See also Continental Data Systems, Inc. v. Exxon Corp.*, 638 F.Supp. 432, 436. (E.D.Pa. 1986). The *B.F. Hirsch* Court explained that this result was mandated by the language of the statute and the intent of Congress. The Court elaborated its reason for requiring the "person" and the "entity" to be separate for the purpose of section 1962(c):

One of the Congressional purposes in enacting RICO was to prevent the takeover of legitimate businesses by criminals and corrupt organizations. It is in keeping with that Congressional scheme to orient section 1962(c) toward punishing the infiltrating criminals rather than the legitimate corporation which might

be an innocent victim of the racketeering activity.

751 F.2d at 633–34 (citations omitted).

ATTIS argues that the Supreme Court's analysis in *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984), compels the conclusion that members of the same corporate family cannot be both "enterprise" and "person" in a single RICO violation. I disagree. In *Copperweld*, Independence Tube Corp. sued Copperweld Corp. and its wholly owned subsidiary Regal Tube Co., alleging that Copperweld and Regal conspired to monopolize commerce under Section 1 of the Sherman Act, 15 U.S.C. § 1.[2] The Supreme Court held that a parent corporation and its subsidiary were legally incapable of conspiring with each other in violation of section 1 of the Sherman Act. *Id.* at 777, 104 S.Ct. at 2745. The conclusion of the *Copperweld* Court stemmed from the structure of the Sherman Act and the nature of the parent corporation—subsidiary corporation relationship.

As the *Copperweld* Court observed, "[t]he Sherman Act contains a 'basic distinction between concerted and independent action.'" 467 U.S. at 767, 104 S.Ct. at 2740 (quoting *Monsanto Co. v. Spray-Rite Service*, 465 U.S. 752, 761, 104 S.Ct. 1464, 1469, 79 L.Ed.2d 775 (1984)). Yet both types of action, concerted and independent, are subject to Sherman Act sanction. Section 2 of the Sherman Act proscribes unilateral conduct which monopolizes or attempts to monopolize trade or commerce.[3] By contrast, Section 1 of the Sherman Act "reaches unreasonable restraints of trade effected by a 'contract, combination ... or conspiracy' between *separate* entities. It does not reach conduct that is 'wholly unilateral.'" *Copperweld, supra*, 467 U.S. at 768, 104 S.Ct. at 2740 (emphasis in original)

(citing *Albrecht v. Herald Co.*, 390 U.S. 145, 149, 88 S.Ct. 869, 871, 19 L.Ed.2d 998 (1968)).

It was in that statutory context that the Court considered the nature and effect of the parent-subsidiary relationship:

A parent and its wholly owned subsidiary have a complete unity of interest. Their objectives are common, not disparate; their general corporate actions are guided or determined not by two separate corporate consciousness, but one. They are not unlike a multiple team of horses drawing a vehicle under the control of a single driver.... [I]n reality, a parent and a wholly owned subsidiary always have a 'unity of purpose or a common design.' They share a common purpose whether or not the parent keeps a tight rein over the subsidiary; the parent may assert full control at any moment if the subsidiary fails to act in the parent's best interest.

*Copperweld, supra*, 467 U.S. at 771, 104 S.Ct. at 2742 (footnote omitted). Because the parent and its wholly owned subsidiary have a "unity of interest," the Court held that coordinated activity between them could not be the type of concerted conduct that Section 1 prohibits. *Id.* at 771–75, 104 S.Ct. at 2742–44. Rather, parent-subsidiary coordination would be subject to the less restrictive controls imposed by Section 2. *Id.* at 768, 104 S.Ct. at 2740.

The *Copperweld* decision does not govern section 1962(c) claims. Section 1962(c) requires two separate entities, but not necessarily independent actors. Indeed, in many instances, section 1962(c) seems to envision the "person" exercising control over the enterprise, precluding the full exercise of independent judgment by the enterprise. The RICO "person" in section 1962(c) must (1) be associated with or em-

---

**2.** Section 1 of the Sherman Act provides, in pertinent part:

"Every contract, combination in the form of a trust or otherwise, or conspiracy in restraint of trade or commerce among the several states, or with foreign nations, is declared to be illegal."

**3.** Section 2 of the Sherman Act, 15 U.S.C. § 2, provides in pertinent part:

Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of trade or commerce among the several states or with foreign nations, shall be deemed guilty of a felony."

ployed by an enterprise, and (2) conduct or participate in the conduct of the enterprise's affairs through a pattern of racketeering activity. In RICO terminology, a "person" can only associate with a separate "enterprise." *B.F. Hirsch, supra,* 751 F.2d at 633–34. One cannot associate with oneself. However, the separation required by section 1962(c) does not require that the two separate entities be fully independent in the same sense that Section 1 of the Sherman Act does. The RICO "enterprise" could well be a passive instrumentality through which the RICO "person" engages in a pattern of racketeering activity. The fact that a wholly-owned subsidiary is compliant to the will of its parent corporation in no way precludes the parent from associating with the subsidiary, or from conducting the subsidiary's affairs through a pattern of racketeering activity. ATTIS's argument to the contrary fails.

### B. *Section 1962(a)*

■ Defendant next contends that "Section 1962(a), like Section 1962(c), requires a separation between the "person" charged with the wrongdoing and the affected "enterprise." Neither party has located any Third Circuit authority on this issue, nor has the Court.[4] In *United States v. The Freshie Co.,* 639 F.Supp. 441 (E.D.Pa.1986), I concluded that the separation required by section 1962(c) is not required by section 1962(a). As I wrote then,

At first glance one might reasonably believe that since "person" and "enterprise" must be distinct under subsection 1962(c), the same should follow for subsection 1962(a), based on the belief that Congress placed two separate terms in the statute to denote distinct entities throughout the statute. Upon a closer reading, however, I believe the phrase found in 1962(c) "employed by or associated with," distinguishes the two sections. While one cannot reasonably "em-

ploy" or "associate with" oneself, "[l]ogic dictates that a corporation, receiving income from a pattern of racketeering in which it has participated as a principal, can invest that income in its own operations." *Commonwealth of Pennsylvania v. Derry Construction Co.,* 617 F.Supp. 940, 943 (W.D. Pa.1985).

I continue to believe that is the proper interpretation of the statute. *See also Haroco, Inc. v. American National Bank & Trust Co. of Chicago,* 747 F.2d 384, 402 (7th Cir.1984), *aff'd per curiam,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985); *United States v. Yonan,* 622 F.Supp. 721, 728 (N.D.Ill.1985). *But see United States v. Computer Sciences Corp.,* 689 F.2d 1181 (4th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983).

### II.

ATTI's second major argument is that the Amended Complaint fails to plead its RICO and fraud counts with sufficient particularity to satisfy the requirements of Fed.R.Civ.P. 9(b).[5] Rule 9(b) provides that:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally.

Defendant asserts that TMC's amended complaint is defective in this regard because it fails to disclose *"who* caused *what* to be placed in the mails or over the wire in furtherance of the alleged scheme or *when* such mailings or communications were made or *to whom* such mailings or communications were made." Defendant's Memorandum of Law at 13.

"[T]he standard for particularity under Rule 9(b) is a generous one in this circuit." *Odesser v. Vogel,* C.A. 85–6931 slip op. at 7 (E.D.Pa. Nov. 5, 1986) [Available on WESTLAW, DCTU database] (Pollak, J.). As the

---

**4.** The Third Circuit in *B.F. Hirsch* declined to reach the issue. 751 F.2d at 634.

**5.** The alleged racketeering activity upon which plaintiffs RICO claim is based consists of acts of

wire fraud, in violation of 18 U.S.C. § 1343, of mail fraud, in violation of 18 U.S.C. § 1341, and of other unspecified acts included in 18 U.S.C. § 1961(1).

Court of Appeals wrote in *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir.1984):

[I]n applying Rule 9(b), "focusing exclusively on its 'particularity' language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.'" *Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 100 (3d Cir.1983) (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1298, at 407 (1969)).... Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of the alleged fraud in order to place the defendant on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. It is certainly true that allegations of "date, place or time" fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.

*See also, Summers v. Lukash*, 562 F.Supp. 737, 739–40 (E.D.Pa.1983).

 In the instant case, the Amended Complaint does disclose the subject of the alleged fraud, the Dimension 2000 switching equipment. In addition, it discloses in general terms the nature of the alleged misrepresentations: that ATTIS made fraudulent statements regarding the security restriction levels of the switch, and regarding service performed to correct deficiencies. However, I conclude TMC has failed adequately to allege the nature of the statements it claims to be fraudulent. Indeed, with the exception of the alleged mental state,[6] plaintiff has alleged little beyond the other counts of the complaint: non-performance of the contract; negligent service; and tortious interference with business relations. Plaintiff must provide more detail concerning the nature of the fraudulent statements, and the particular context in which they were made. Furthermore, plaintiff must also allege a *pattern*

of fraudulent conduct to satisfy the "pattern of racketeering activity" as required by section 1962(c) of RICO. See *Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 606, —— n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346, 358–59 n. 14 (1985).

An appropriate order follows.

## ORDER

AND NOW, this 15th day of December, 1986, it is hereby Ordered that defendants motion to dismiss Counts II and VI of the Amended Complaint is GRANTED. Count II and Count VI are DISMISSED, with leave to file a Second Amended Complaint within five days of this Order.

AND IT IS SO ORDERED.

---

6. Fed.R.Civ.P. 9(b) permits the mental state to be pleaded generally.