**BLUE LINE COAL COMPANY, INC.,
Anthony J. Bukovich, Jr. and
Roberta J. Bukovich**

v.

**EQUIBANK, Alan S. Fellheimer,
William M. Densmore and John
A. Kincaid, Jr.**

No. 87–6150.

United States District Court,
E.D. Pennsylvania.

Feb. 19, 1988.

Robert E. Slota, Murphy & Slota, Bryn Mawr, Pa., for plaintiffs.

William A. Harvey, Klehr, Harrison, Harvey, Branzburg, Ellers & Weir, Philadelphia, Pa., for defendants.

## MEMORANDUM

LUDWIG, District Judge.

Defendants Equibank, Densmore and Kincaid move for dismissal under Fed.R. Civ.P. 12(b)(1) and 12(b)(6) or, in the alter-

native, for a more definite statement under Fed.R.Civ.P. 12(e).

This action claims violations by defendants[1] of the Bank Company Holding Act, 12 U.S.C.A. § 1972 (1980 & West Supp. 1987), and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.A. § 1961 *et seq.* (1984). Additionally, the complaint alleges pendent state claims for breach of contract, interference with prospective contractual relations and breach of fiduciary duty. Jurisdiction is federal question. 28 U.S.C. § 1331.

The complaint alleges: In 1980, plaintiff Blue Line Coal Company, Inc. obtained a line of credit from Equibank. Defendant Kincaid is an attorney for Equibank and Densmore is an Equibank employee. Plaintiffs Anthony J. Bukovich, Jr. and Roberta J. Bukovich personally guaranteed the line of credit. Individual plaintiffs also had a personal loan with Equibank. In April 1983, Equibank declared the personal loan in default. On October 1, 1983, plaintiffs and Equibank agreed to restructure the loan debt, and the bank was assigned certain Blue Line accounts receivable. On March 7, 1984 the bank unilaterally breached the workout agreement.

### I. Motion to Dismiss under Fed.R.Civ.P. 12(b)(6)

A Rule 12(b)(6) motion functions to test the formal sufficiency of the complaint against the liberal pleading requirements of Rule 8(a). 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1356, at 590 (1969). Consistent with Rule 8(a), a pleading need only furnish a short and plain statement of the claim showing that the pleader is entitled to relief. Fed.R. Civ.P. 8(a).[2] "The issue is not whether a plaintiff will ultimately prevail but whether claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Estate of Bailey v. County of York,* 768 F.2d 503, 506 (3d Cir.1985). A complaint should not be dismissed under 12(b)(6) "unless it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In evaluating whether dismissal is proper, "factual allegations of the complaint are to be accepted as true," and "[r]easonable inferences will be drawn to aid the pleader." *D.P. Enter., Inc. v. Bucks County Community College,* 725 F.2d 943, 944 (3d Cir.1984).

### A. *Bank Holding Company Act*

Count II of the complaint alleges a violation of the Bank Holding Company Act, 12 U.S.C.A. § 1972. Section 1972(1)(C) prohibits tying arrangements. It forbids banks to extend credit or furnish any service on condition "that the customer provide some additional credit, property, or service to such bank, other than those related to and usually provided in connection with a loan, discount, deposit or trust service." 12 U.S. C.A. § 1972(1)(C). Plaintiffs assert that the workout agreement is a tying arrangement in that it conditions the continuing performance of Equibank's obligations under the loan agreement on the pledge of additional collateral and security.

Individual defendants contend that count II should fail because natural persons are not liable under the Bank Holding Company Act. Together with Equibank, they also contend that the demand for additional security and collateral is consistent with ordinary and customary banking practices and evidences prudence, not an anti-competitive device.

■ The contention that § 1972 of the Bank Holding Company Act does not impose liability on individuals is well taken. *See, e.g., Tose v. First Pennsylvania Bank,* 648 F.2d 879, 898 n. 23 (3d Cir.), *cert. denied,* 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981). Accordingly, count II must be dismissed against Kincaid and Densmore.

---

1. The complaint against defendant Alan S. Fellheimer was dismissed without prejudice on October 23, 1987.

2. An exception to this general rule of pleading is a RICO claim, which is discussed *infra.*

■ Section 1972(1)(C) "does not prohibit all attempts by banks to use their economic power to protect their investments." *Bank of Am. Nat. Trust and Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 595 F.Supp. 800, 802 (E.D.Pa.1984). Instead, the Act prohibits only unusual or uncommon banking activities which are "anti-competitive practices which require bank customers to accept or provide some other service or product or refrain from dealing with other parties in order to obtain the bank product or service they desire." *Tose*, 648 F.2d at 897 (quoting S.Rep.No. 1084, 91st Cong., 2d Sess. 17, *reprinted in* [1970] U.S. Code Cong. & Ad. News 5519, 5535). *See also McCoy v. Franklin Sav. Ass'n*, 636 F.2d 172 (7th Cir.1980); *Continental Bank v. Barclay Riding Academy, Inc.*, 93 N.J. 153, 459 A.2d 1163, *cert. denied*, 464 U.S. 994, 104 S.Ct. 488, 78 L.Ed.2d 684 (1983).

Although there are cases holding that a particular request for additional collateral is not an anti-tying violation of the Bank Holding Company Act, *see, e.g., Nordic Bank PLC v. Trend Group, Ltd.*, 619 F.Supp. 542, 557 (S.D.N.Y.1985); *Freidco v. Farmers Bank*, 499 F.Supp. 995, 1002 (D.Del.1980), plaintiffs should be given an opportunity to support, through discovery, their contention that Equibank's workout agreement is an anti-competitive tying agreement.

### B. *Intentional Interference with Prospective Contractual Relations*

■ Count IV of the complaint alleges that Equibank was aware that breaching the workout agreement would prevent plaintiffs from acquiring or continuing to have contractual relations with Michigan utilities. Defendants contend that the complaint fails to allege that defendants "acted with the specific intent to injure the plaintiff[s] in [their] business relationships with others." *Iron Mountain Secur. Storage Corp. v. American Specialty Foods, Inc.*, 457 F.Supp. 1158, 1170 (E.D.Pa.1978). *See also George A. Davis, Inc. v. Camp Trials Co.*, 447 F.Supp. 1304, 1310 (E.D.Pa.1978); *Glazer v. Chandler*, 414 Pa. 304, 200 A.2d 416 (1964) (mere breach of a contract having incidental effect of injuring plaintiff's business relations with others is not sufficient for tort of intentional interference).

However, it is alleged in the complaint that defendants "knew" their actions would interfere with plaintiffs' contractual relations with third parties. While this is "not 'quite the gist of the tort'" for which the plaintiffs seek redress, *Davis*, 447 F.Supp. at 1311, it comports with an allegation of specific intent to harm. Therefore, this is not a case "where the claimed interference amounts to nothing more than a breach of the contract." *Id.* (citing *Sherman v. Weber Dental Mfg. Co.*, 285 F.Supp. 114, 116 (E.D.Pa.1968)). *See generally Breslin v. Vornado, Inc.*, 559 F.Supp. 187, 190–92 (E.D.Pa.1983).

### C. *Breach of Contract*

■ Count I, the breach of contract count, is dismissed as to Densmore and Kincaid. Neither is alleged to have entered into the workout agreement.

### D. *Breach of Fiduciary Duty*

■ Count V alleges that by exercising control over Blue Line, defendants became its fiduciary. Defendants contend that this claim is not supported by factual allegations in the complaint.

Although a lender does not ordinarily owe a fiduciary duty to a borrower, *see Federal Land Bank v. Fetner*, 269 Pa.Super. 455, 410 A.2d 344 (1979), *cert. denied*, 446 U.S. 918, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980), a confidential relationship may arise if the creditor "gains substantial control over the debtor's business affairs." *Stainton v. Tarantino*, 637 F.Supp. 1051, 1066 (E.D.Pa.1986). Generally, courts have insisted upon a strong showing of control. *See, e.g., NCNB Nat. Bank v. Tiller*, 814 F.2d 931, 936 (4th Cir.1987) ("actual day-to-day involvement in management and operations of the borrower or the ability to compel the borrower to engage in unusual transactions is required [to show] that a lending institution had control over the borrower"); *Cossoff v. Rodman*, 699 F.Supp. 599, 610–11 (2d Cir.1983) (creditor's monitoring of operations and proffering management

advice, without more, does not show control); *Krivo Indus. Supply Co. v. Nat. Distillers & Chemical Corp.*, 483 F.2d 1098, 1105 (5th Cir.1973) ("merely taking an active part in the management of the debtor corporation does not automatically constitute control"); *James E. McFadden, Inc. v. Baltimore Contractors, Inc.*, 609 F.Supp. 1102, 1105 (E.D.Pa.1985) (creditor must assume absolute and total control not just take steps to minimize risk).

The complaint alleges that defendants dominated and controlled Blue Line. Factually, it is averred that Equibank renegotiated coal contracts without consulting plaintiffs. While defendants are correct that plaintiffs may have to make a stronger showing to prevail, plaintiffs should have the opportunity to establish, through discovery, the ultimate fact of control on which this count depends.

### E. *RICO*

Count III of the complaint alleges a violation of civil RICO. According to the complaint, defendants fraudulently induced plaintiffs to enter into the workout agreement to give defendants control over the operations of Blue Line. Plaintiffs contend that this fraud constituted a "pattern of racketeering" in violation of RICO, § 18 U.S.C.A. § 1962(a) & (c). Defendants argue that plaintiffs' RICO claims are deficient because the complaint fails to plead: (1) fraud with sufficient particularity; and (2) a pattern of racketeering activity.

Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). "[T]he standard for particularity under Rule 9(b) is a generous one in this circuit." *Odesser v. Vogel, C.A.*, 85–6931, slip. op. at 7 (E.D.Pa. Nov. 5, 1986) [Available on WESTLAW, 1986 WL 12769]. "[A]llegations of date, time and place are not required." *LSC Assocs. v. Lomas & Nettleton Fin. Corp.*, 629 F.Supp. 979, 983 (E.D.Pa.1986). Rule 9(b) requires "plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to

place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985). *See also Philadelphia TMC, Inc. v. AT & T Information Sys., Inc.*, 651 F.Supp. 169, 174 (E.D.Pa.1986); *LSC Assocs.*, 629 F.Supp. at 983.

Defendants' position is that the complaint does not set forth with any particularity the nature of the scheme to defraud or the allegedly false statements that induced plaintiffs to enter into the workout agreement.

The complaint contains the workout agreement. It also alleges that defendants mailed monthly statements of accounts and other documents and made phone calls for the purpose of effectuating an alleged scheme. It does not describe the scheme or recite the facts showing fraudulent inducement. While it is not necessary for the complaint to set forth details, such as the date of a phone call or letter, it must plead enough specific information to delineate the substance of the fraud.

Plaintiffs maintain that they are unable to plead fraud with particularity because the facts are within the control of defendants. The complaint falls short of alleging a fraudulent scheme even in general terms. However, the motion to dismiss for failure to allege a RICO claim will be denied without prejudice to reassertion. Plaintiffs will be given the opportunity to take discovery for 45 days and to file an amended RICO count within 15 days thereafter. *See, e.g., Moravian Dev. Corp. v. Dow Chem. Co.*, 651 F.Supp. 144, 148–49 (E.D.Pa.1986); *Eaby v. Richmond*, 561 F.Supp. 131, 136–37 (E.D.Pa.1983).

Moreover, in order to withstand any subsequent 12(b)(6) challenge, plaintiffs will have to submit a RICO case statement complying with the RICO case order entered in conjunction with this memoran-

dum.[3]

## II. Motion for a More Definite Statement

■ Defendants also move for a more definite statement under Fed.R.Civ.P. 12(e). They contend that the complaint does not sufficiently set forth the allegedly wrongful actions of the individual defendants. Defendants assert that "[a]bsent evidence of inducement or encouragement," Kincaid, an attorney for Equibank, cannot be held liable for his client's tortious activities. *See Harvey v. Pincus,* 549 F.Supp. 332, 343 (E.D.Pa.1982). Similarly, defendants argue that Densmore, an Equibank employee, cannot be held liable for Equibank's tortious activities unless he was a participant. *See Wicks v. Milzoco Builders, Inc.,* 503 Pa. 614, 621, 470 A.2d 86, 90 (1983).

Rule 12(e) provides that a motion for a more definite statement may be granted if the complaint is "so vague and ambiguous that [the defendant] cannot reasonably be required to frame a responsive pleading." Fed.R.Civ.P. 12(e). *See, e.g., Barlow v. Pep Boys, Inc.,* 625 F.Supp. 130 (E.D.Pa. 1985). "[T]he class of pleadings that are appropriate subjects for a motion under 12(e) is quite small—the pleading must be sufficiently intelligible for the court to make out one or more potentially viable legal theories ... but it must be so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself." 5 C. Wright and A. Miller, *Federal Practice and Procedure,* § 1356, at 733 (1969). *See also Marcarelli v. Delaware County Memorial Hospital,* 86–1630, slip. op. (E.D.Pa. Sept. 26, 1986) [Available on WESTLAW, 1986 WL 10665].

The legal theories under which plaintiffs claim to be entitled to relief against Kincaid and Densmore are adequately identified in the complaint. While the complaint does not allege specific conduct, this information can be obtained through discovery. The motion under Rule 12(e) will be denied.

**3.** Defendants' motion to dismiss the pendent state claims for lack of subject matter jurisdic-

## ORDER

AND NOW, this 19th day of February, 1988, defendants Equibank, William M. Densmore and John A. Kincaid's motion to dismiss under Fed.R.Civ.P. 12(b)(1) and 12(b)(6), or, in the alternative, for a more definite statement under 12(e) are ruled on as follows:

1. The motion to dismiss counts I and II against defendants Densmore and Kincaid is granted. Otherwise, the motion is denied.

2. The motion for a more definite statement is denied.

Plaintiffs shall have 45 days within which to discover facts in support of the theories stated in the complaint and an additional 15 days within which to file an amended complaint, together with a RICO case statement complying with the RICO case order entered herewith.

tion must also be denied without prejudice at this stage.